UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KHARY JAMAL ANCRUM, :
:
    Petitioner, : CIVIL ACTION NO. 3:11-CV-1420
:
v. : (JUDGE CONABOY)
: (Magistrate Judge Mannion)
RONNIE HOLT, :
:
    Respondent, :
:

**MEMORANDUM**

    Here we consider Magistrate Judge Malachy E. Mannion's Report and Recommendation (Doc. 11) in which he recommends that Petitioner's habeas corpus petition (Doc. 1) be dismissed. In the underlying action, Petitioner claims that his rights under the Due Process Clause were violated because the Disciplinary Hearing Officer ("DHO") at the United States Penitentiary Canaan ("USP-Canaan") did not determine the reliability of confidential inmate witness statements used against him. (Doc. 11 at 1.)

    Petitioner filed Petitioner's Objections to the Report and Recommendation (Doc. 12) on May 24, 2012. When a plaintiff files objections to a magistrate judge's report, the reviewing court conducts a *de novo* review of those portions of the report to which objection is made. 28 U.S.C. § 636(b)(1). To warrant *de novo* review, the objections must be both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). The court may accept, reject or modify, in whole or in part, the findings made by the magistrate judge. 28 U.S.C. § 636(b)(1). Uncontested portions of

the report are reviewed for clear error. *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

Upon *de novo* review of the issues raised in Plaintiff's objections to the Report and Recommendation and clear error review of the uncontested portions of the Report and Recommendation, we concur with the Magistrate Judge's conclusion that this case should be dismissed although we modify the basis for doing so.

## I. Background

Petitioner does not object to the background set out in Magistrate Judge Mannion's Report and Recommendation (Doc. 11 at 2-4). Therefore we repeat that recitation here.

> Another inmate, whom respondent refers to as "Inmate A" was investigated because it was discovered that he was using code phone calls and emails to introduce drugs into the prison. (Doc. No. 7 at 3.) Inmate A had multiple phone calls and emails recorded and decoded, mostly between Inmate A and his brother, which made it clear to prison officials that Inmate A was receiving and selling drugs in prison. (*Id.* at 8-27.) Most of the 19 pages of transcript refer only to Inmate A, his brother, and their suppliers outside of the prison. (*Id.*) However, on January 11, 2009, Inmate A asked his brother to bring "my man's girl" (according to the investigation, referring to Ancrum) to visit. (*Id.* at 25.) Two days later, on January 13, 2009, Inmate A sent an email to someone outside the prison asking her to give his brother the phone number of Ancrum's girlfriend so that Inmate A's brother could contact her and bring her to the prison to visit. (*Id.*) That same date, Inmate A contacted his brother and asked if he made contact with "my man's girl." (*Id.* at 26.) Inmate A's brother indicated in the

2

affirmative. (*Id.*) That same date, Inmate A emailed his brother and asked him to introduce "my man girl" (again, according to the investigation, referring to Ancrum) to "bamma tim" (according to the investigation "bamma tim" is slang for marijuana). (*Id.*)

As a result of all the contacts between Inmate A and his brother, three inmate witnesses were interviewed, two of which were identified by name in the sealed exhibit, the third was only identified as a confidential informant. (*Id.* at 4-6.) Because all of the information provided by the witnesses is in a sealed document, the court will generally summarize the statements of the witnesses, but the parties are to be assured that the court thoroughly reviewed the statements of witnesses. Two of the three witnesses were interviewed because of prior positive urinalysis drug tests, the third was interviewed because he had suspicious monetary transactions. Two of the three witnesses stated that they had bought heroin from Ancrum, the third explained that Ancrum sells drugs, but did not state that he himself had bought drugs from Ancrum. There was no mention of marijuana or Ancrum's girlfriend.

As a result of the investigation, Ancrum received an incident report for a Code 113 - Possession of any Narcotics not Prescribed for the Individual by Medical Staff. (*Id.* at 28 and Doc. No. 9-1 at 25-26.) The DHO hearing report indicates that Ancrum denied the charge and explained that his girlfriend needed a ride. (Doc. No. 9-1 at 35-38.) The DHO wrote a long evidentiary explanation, all of which, with the exception of one sentence focused on Inmate A's implication of Ancrum. The DHO wrote in the report, in the section entitled "Specific Evidence Relied Upon to Support Findings" that the evidence he relied upon was Inmate A's implication of Ancrum in the introduction of marijuana into the prison. (Doc. No. 9-1 at 36-37). The DHO wrote one sentence stating that he found that

3

>Ancrum possessed and sold powder and black tar heroin to other inmates, and that he relied upon the testimony of the three inmate witnesses who stated that in the past they or other inmates had bought heroin from Ancrum.

(Doc. 11 at 2-4.)

After the DHO determined that the greater weight of the evidence supported the charge, he imposed the following sanctions: 1) loss of 40 days good conduct time; 2) 60 days disciplinary segregation; 3) four years loss of visiting privileges, followed by four years of restricted visiting; 4) two years loss of commissary privileges; 5) impound of personal property (excluding religious and legal materials) for two years; and 6) three years loss of telephone and e-mail privileges.  (Doc. 9 at 8.)

## II. Discussion

Magistrate Judge Mannion concluded that "[b]ecause there is some evidence upon which the DHO could rely and also because there is indicia that the confidential informants were reliable due to their corroborating statements, it is recommended that the petition be dismissed."  (Doc. 11 at 5.)  Petitioner objects to this conclusion asserting the following:

>1.  The petitioner's core claim is that his procedural due process rights were violated at the disciplinary hearing because the hearing officer relied upon the statements of three confidential inmate informants to find the petitioner guilty of misconduct before making a determination that the informants had a history of reliability, as expressly required by Bureau of Prisons Policy codified at 28 C.F.R. Section

4

>541.8(f)(6).  The R & R expressly found an absence of compliance with Section 541.8(f)(6).  (R & R at p. 8).  This finding alone entitles the petitioner to relief.  *See Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1988).
>
>2.  The petitioner specifically contests as erroneous the conclusion in the R & R that the informants were nonetheless reliable.  (R & R at p. 9).  Section 541.8(f)(6) required such a finding to be made by the BOP before it could give weight to such statements.

(Doc. 12 at 1-2.)  As relief, Petitioner seeks a new hearing that fully complies with § 541.8(f)(6).  (Doc. 12 at 2.)

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out the protections due an inmate at a prison disciplinary hearing where a prisoner faces the loss of good conduct time as a result of the charged infraction.  418 U.S. at 556-57.  The following minimum procedural protections are to be provided: 1) written notice of the charge at least twenty-four hours before the hearing; 2) an opportunity to present witnesses and documentary evidence; 3) an impartial tribunal; 4) a written statement by the adjudicatory board describing the evidence relied upon and the reasons for reaching its decision; and 5) if the inmate is illiterate or the issues are so complex that the inmate is unable to effectively defend himself, assistance from another inmate or a member of the prison's staff.  *Wolff*, 418 U.S. at 562-72.

The Court later clarified in *Sandin v. Conner*, 515 U.S. 472 (1995), that the *Wolff* due process requirements do not apply in

every prison disciplinary action. Rather, it is where deprivations infringe on a protected constitutional interest (an interest created either through the workings of the Constitution itself or through a state-created interest) that the protections of the due process clause apply. *Id.* at 487. Even if it appears that a prisoner did not receive the protections required, the reviewing court must undertake a harmless error analysis to determine whether the prisoner's rights were violated. *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (listing cases).

The United States Supreme Court established the evidentiary standard for prison disciplinary hearings in *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445 (1985). The Court held "the requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary board to revoke good time credits." *Id.* at 455. This standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of evidence." *Id.* at 455-56; *see also Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989). "A court need not undertake a searching inquiry to ascertain the presence of 'some evidence' supporting a disciplinary ruling; the 'relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board.'" *Moles v. Holt*, 221 F. App'x 92, 94 (3d Cir. 2007) (not precendential) (*quoting Hill*, 472 U.S. at 455-56

(emphasis added in *Moles*)). A challenge that goes to the weight of the evidence is irrelevant to the issue of whether the DHO's finding had a constitutionally sufficient evidentiary basis." *Id.* (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989).

"[A] violation of prison regulations in itself is not a constitutional violation." *Gibson v. Federal Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) (citing *Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000)); *see also Oriakhi v. Wood*, No. 3:CV-05-0053, 2006 WL 859543, at *4 (M.D. Pa. 2006) (Vanaskie, J.). Because the Constitution does not require strict adherence to administrative regulations and guidelines, a petitioner's allegations that the defendant did not comply with administrative regulations at a disciplinary hearing does not give rise to a constitutional claim--"[t]he Constitution requires only compliance with minimal federal due process standards." *Flanagan v. Shively*, 783 F. Supp. 922, 931 (M.D. Pa. 1992). Thus, to succeed on a procedural due process claim related to a disciplinary hearing, a petitioner must show a violation of the *Wolff* standards. *See Macia v. Williamson*, 219 F. App'x 229, 233 (3d Cir. 2007) (not precedential); *see also Thibodeau v. Watts*, No. Civ. 1:CV-05-2502, 2006 WL 89213, at *4 (M.D. Pa. 2006).

Due process requirements regarding a DHO's reliance upon a confidential informant were addressed by the Third Circuit Court of Appeals in *Helms v. Hewitt*, 655 F.2d 487 (3d Cir. 1981), *rev'd on*

7

*other grounds*, 459 U.S. 460 (1983). When a prison tribunal's determination is derived from an unidentified informant, *Helms* held that the procedures adopted by the First Circuit in *Gomes v. Travisino*, 510 F.2d 537 (1st Cir. 1974), must be followed to provide minimum due process. 655 F.2d at 502.

> "(1) [T]he record must contain some underlying factual information from which the [tribunal] can reasonably conclude that the informant was credible or his information reliable; (2) the record must contain the informant's statement (written or as reported) in language that is factual rather than conclusionary and must establish by its specificity that the informant spoke with personal knowledge of the matters contained in the statement."

655 F.2d at 502 (quoting *Gomes*, 510 F.2d at 540) (alterations in *Helms*). "'[T]he record' includes not only the evidence presented at the disciplinary hearing but also the investigative report." *Henderson v. Carlson*, 812 F.2d 874, 879 (3d Cir. 1987). *Henderson* held that "a prison disciplinary hearing committee need not reveal at a disciplinary hearing evidence bearing on the reliability of confidential informants if prison officials believe that such evidence is capable of revealing the identity of the informants and if the evidence is made available to the court for *in camera* review." *Id.* at 880.

After discounting evidence related to Inmate A and concluding the only evidence against Petitioner are statements made by three witnesses, the Magistrate Judge determined that the witnesses upon

whom the DHO relied were confidential informants. (Doc. 11 at 8.) Magistrate Judge Mannion further determined that both BOP policy and 28 C.F.R. § 541.8(f)(6) require that confidential informant testimony be found reliable by the DHO. (Doc. 11 at 8.) He cites *Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1988), the case upon which Petitioner relies (*see* Doc. 14 at 1, 2), for the proposition that "[s]taff must ma[k]e a determination that indicates that the informant is reliable before being given any weight at the hearing." (Doc. 11 at 8.) Magistrate Judge Mannion concluded that Petitioner's due process rights were not violated because the record contains information supporting the reliability of the confidential informants. (Doc. 11 at 9.)

We concur with Magistrate Judge Mannion that Petitioner's due process rights were not violated but expand upon his analysis, clarifying that this finding is appropriate under relevant Third Circuit precedent. As a general matter, here Petitioner faced the loss of good conduct time and, therefore, was entitled to procedural due process protections. Respondent argues that *Hill's* "some evidence" standard should be applied. (Doc. 9 at 11-16.) We disagree based on the totality of the relevant caselaw set out above.[1] Because the DHO's reliance on confidential informants'

---

[1] Most circuits assessing the interplay of *Hill's* "some evidence" standard and due process requirements regarding the use of confidential informant information in a DHO determination have held that due process in these cases requires "some record documentation of the informant's reliability." *Baker v. Lyles*, 904

information is the issue raised in the Petition and Petitioner's objections, we find *Helms* controlling. Turning now to the analysis of the use of confidential information in this case, we note that, even assuming *arguendo* that the DHO did not comply with the relevant BOP policy and regulatory provision, Petitioner's due process rights were not violated unless the minimum procedures set out in *Helms* were not met.

Under the first prong of the *Helms* inquiry, we conclude from our careful *in camera* review of the record, particularly the investigative report, that it contains ample information from which the DHO could reasonably conclude that the confidential informants were credible. As Magistrate Judge Mannion found, corroboration of witness testimony is a recognized indicia of reliability and here the three confidential informants presented corroborating information about the details of Petitioner's prior heroin sales in prison. (Doc. 11 at 8-9 (citing *Mendoza v. Miller*, 779 F.2d 1287 (7th Cir. 1985), *cert. denied*, 476 U.S. 1142 (1986))[2]); *see also*

---

F.2d 925, 934 (4th Cir. 1990) (Sprouse, J. dissenting) (listing cases). "The 'some evidence' standard . . . only determines the amount of evidence required; it does not address the quality of that evidence." *Cook v. Lehman*, 863 F. Supp. 207, 210 (E.D. Pa. 1994). *Hill* and *Helms* taken together "establish (1) the minimum quantum of evidence required to uphold a disciplinary proceeding's finding of guilt, and (2) the quality of evidence--the credibility and reliability of confidential sources--which must be present at such a hearing." *Id.*

[2] According to *Mendoza*

> [t]he reliability of confidential informants

*Muhammad v. Butler*, 655 F. Supp. 1470, 1480 (D.N.J. 1987) (setting out *Mendoza* reliability determination standard).

The second *Helms* requirement is also met. The record contains the confidential informants' statements (as reported) "in language that is factual rather than conclusionary and . . . establish by [their] specificity that the informant[s] spoke with personal knowledge of the matters contained in the statement[s]." 655 F.2d at 502. Each of the three statements contain factual details exhibiting personal knowledge of the importation and distribution of heroin at USP-Canaan. Petitioner was named in each of the statements as being involved in the activity.

Because both prongs of the *Helms*' test are met, Petitioner's constitutional rights were not violated. Petitioner received the process due under the law of this Circuit where a confidential

---

       may be established by: (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary hearing committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that[] he had firsthand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability; or (4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant.

779 F.2d at 1293 (internal citations and quotations omitted).

11

informant's testimony is relied upon by the DHO.[3] Finding no clear error in the uncontested portions of the Report and Recommendation, Petitioner's 28 U.S.C. § 2241 Petition is properly dismissed.

### III. Conclusion

For the reasons discussed above, we adopt the Report and Recommendation (Doc. 11) as modified and dismiss Petitioner's 28 U.S.C. § 2241 Petition (Doc. 1). An appropriate Order is filed simultaneously with this Memorandum.

                                  _/s/ Richard P. Conaboy_
                                  RICHARD P. CONABOY
                                  United States District Judge

DATED: 7/14/12

---

[3] While we agree with the Magistrate Judge that the better practice would be for the DHO to include the finding of reliability in his decision (see Doc. 11 at 9), it is important for Petitioner to understand that the better practice or compliance with policies and regulations is not the appropriate inquiry in the determination of whether an inmate's constitutional due process rights were violated.

To the extent Petitioner may argue that under _Henderson_ the DHO should have made a finding that he believed evidence bearing on the reliability of the confidential informants was capable of revealing the identity of the informants, see 812 F.2d at 880, we would find this omission by the DHO to be harmless error. See _Grossman v. Bruce_, 447 F.3d 801, 805 (10th Cir. 2006) (listing cases).